Mabel Bennett, Appellee, v. Illinois Power and Light Corporation, Appellant.

Gen. No. 8,519.

184

Opinion filed May 19, 1933. Rehearing denied June 21, 1933.

Thomas J. Welch and E. Bentley Hamilton, for appellant.

Gregg A. Young and James H. Andrews, for appellee.

Mr. Presiding Justice Wolfe delivered the opinion of the court.

The appellee, hereinafter called the plaintiff, secured a verdict and judgment for $9,600 against the appellant (hereinafter called the defendant) as damages for personal injuries sustained from the overturning on a public highway of a buggy in which she was riding. The said buggy was drawn by a horse which was driven by her son, Vernon Bennett.

The plaintiff based her cause of action on two charges separately alleged in two counts. It is averred in the first count of the declaration that her injuries were caused by the horse becoming frightened at three spools of electric wire negligently and unlawfully placed in the highway, and in the second count "placed and left" in the highway by the defendant, contrary to the statute. The defendant assigns as error that there is a variance between the charge of negligence and unlawfulness of the two counts and the proof offered by the plaintiff. The question arises: "Is the plaintiff now attempting to recover on a ground of negligence or unlawfulness not charged in the first count of the declaration?" That there is a difference between variance and the rule that recovery may be had only on the negligence charged in the declaration, is forcibly pointed out in the cases of *Peterson v. Sears, Roebuck & Co.*, 242 Ill. 38, and *Buckley v. Mandel Bros.*, 333 Ill. 368.

The first count alleges that the plaintiff was riding, in an easterly direction, in a buggy along a public road in Neponset township in Bureau county, on June 10,

1929; that shortly prior to this occasion the defendant *negligently, carelessly* and *unlawfully* placed upon the south side of the road three spools of wire, which were round in form and about four feet in diameter, and aluminum in color; that the spools stood edgewise in the grass and weeds along the south side of the beaten track and 12 or 15 feet north from the hedge fence along the south side of the road; that the horse became frightened at the spools, ran away and overturned the buggy, etc.

The second count avers that the defendant negligently placed the spools upon the south side of the beaten track of the road in the weeds and grass along the roadway; that they were an obstruction to the public road and left there by the defendant and remained there contrary to the statute in such case made and provided; that the defendant placed the spools on the side of the road in violation of the statute; that because of the violation of the said statute by the defendant, the horse became frightened, ran away, and as a result thereof the plaintiff sustained the injury complained of, etc. Both counts allege that the horse was an ordinarily gentle one; that the spools were calculated to frighten an ordinarily gentle horse; that the plaintiff was in the exercise of due care, etc.

The defendant filed the plea of general issue and gave notice that it would prove by virtue of the authority granted to it by the Illinois Commerce Commission, that the defendant was authorized and directed to locate, erect, and construct steel towers with double support transmission lines from La Salle to Kewanee along the highway of Neponset township at the point where the plaintiff was injured; that said order was entered by said commission on October 26, 1927, and on the same date a certificate of convenience and necessity was granted by said commission to the defendant authorizing the construction and maintenance of said

lines; that at the time the spools of wire were so placed in the highway, the defendant had, by leave and license of the owner of the land abutting upon the highway in question, the right and authority to place spools of wire there in the highway; that said right was in writing and constituted a right of way easement; that said easement conveyed to the defendant the perpetual right to erect, maintain and operate a line of steel towers and wires upon the land so conveyed; that the easement granted included the right to transmit electric energy over said lines, to enter said premises for the purpose of erecting steel towers and supports therefor, stringing wires on the towers, repairing or removing the same, and the right to trim or remove trees, etc.

At the close of the plaintiff's evidence, the defendant made a motion for a peremptory instruction on the alleged ground of material and substantial variance between the allegations of the declaration and the proof. The instruction was directed solely to the first count and stated the ground of variance to be: "The declaration alleging that the defendant negligently and carelessly and unlawfully placed upon the south side of the public road certain spools of electric transmission wire and the proof offered by the plaintiff having failed to show that said spools were unlawfully placed upon said road and having failed to show that the defendant violated any law or statutory provisions the defendant not guilty under the first count; this with reference thereto." The motion being overruled and the instruction refused by the court, the defendant made a motion that the court instruct the jury to find motion with instruction was overruled. The defendant then made a motion that the court instruct the jury to find the defendant not guilty under the second count on the ground of a material variance between the declaration and the proof, because the plaintiff failed

to prove that the spools were *placed* and *left* on the roadside contrary to any statute of the State of Illinois, or contrary to any law of Illinois. Said motion was overruled and plaintiff then submitted the usual motion and instruction to find the defendant not guilty, which was also overruled. Separate motions were then made by the defendant to find the defendant not guilty under the first and second counts, which motions were likewise overruled.

The defendant, as a part of its defense, proved that it had on October 26, 1927, been granted authority by the Illinois Commerce Commission to locate, erect and control steel towers with transmission lines along the highway in question at the point where the plaintiff was injured; that on the same date a certificate of convenience and necessity was granted by said commission authorizing the construction and maintenance of said lines; also, that the defendant was granted an easement by the owner of the fee of said highway, all as is alleged in the notice to be offered by the defendant under its plea of the general issue. The defendant introduced evidence tending to contradict the plaintiff's case on the merits, and proved that it placed the spools on the highway for the purpose of stringing the wire on the towers standing on the land, the owner of which had granted to the defendant the easement aforesaid. The motions made by the defendant at the close of the plaintiff's evidence were all again made by the defendant at the close of all of the evidence in the case, and overruled by the court. The only error which the defendant may now assign in this court, because of the overruling of said motion is, that the trial court erred in overruling the motions made at the close of all of the evidence in the case. *Gilbert v. Watts-DeGolyer Co.,* 169 Ill. 129.

In general, the defendant argues that the proof fails to show that the spools were illegally, or without right,

placed in the highway, and also specifies that there is a variance, or failure of proof, because the first count alleges that the spools were "unlawfully" placed in the highway and there is no evidence proving this particular allegation. After disposing of this specific objection directed to the first count, the general proposition of the defendant that since it had the right to place the spools in the highway it cannot be held liable because the spools were frightful to horses will be considered.

The allegation of the first count that the spools were unlawfully placed in the highway is a legal conclusion of the pleader; there are no facts alleged in the first count of the declaration from which the inference can be legitimately drawn that the action of the defendant placing the spools in the highway was unlawful, or a nuisance *per se*. *Lefkovitz v. City of Chicago,* 238 Ill. 23; *Nance v. Georgia, C. & N. Ry. Co.,* 35 S. C. 307, 14 S. E. 629. If the evidence tends to support the other allegation of count one that the placing of the spools in the highway was negligently and carelessly done by the defendant, then the allegation that they were unlawfully placed in the highway by defendant may be treated as surplusage and be disregarded. *Guianios v. De Camp Coal Co.,* 242 Ill. 278. There is no variance unless. it is material and substantial. *Chicago West Division Ry. Co. v. Mills,* 105 Ill. 63.

It will be noticed that the allegations of the first count are very general and whether the alleged negligence of the defendant consisted in placing the spools too near the traveled part of the highway or consisted in the manner of their arrangement in position, or piling on the highway, was left as a matter to be determined by the evidence. The defendant submits the following as a proposition, or a rule of law, governing the case: "The placing of the spools on the side of the road by the defendant having the right and au-

thority to do so, even though calculated to frighten a reasonably gentle horse, did not constitute negligence and is not the standard by which the liability of the party placing them is to be measured."

It is an elementary principle of law that to constitute negligence it is not necessary that the act or omission complained of should involve any act of illegality; also, that negligence may consist of doing a legal act in a careless or negligent manner. Therefore, it is clear that the proposition of the defendant cannot be accepted without amendment embodying the limitation that the assumed act of the defendant must have been done in a reasonably prudent and careful manner. Cases aptly in point illustrating this phase of negligence and its inclusion as a necessary element of a definition of actual negligence, under the hypothesis are found in the reports. Thus, in the case of *Clark v. Hart,* 98 Ky. 31, 17 Ky. L. Rep. 604, 32 S. W. 216, a declaration, upon demurrer thereto, was held insufficient because it did not allege at what distance from the traveled part of the highway, the object which frightened a horse thereon, had been placed by the defendant. In *Valley v. Concord & M. R. R.,* 68 N. H. 546, 38 Atl. 383, the declaration alleged that the defendant negligently and carelessly placed, piled, scattered about, close to a public highway, planks, timber and lumber, and it is held in that case as follows: "One who negligently places near a highway an object calculated to frighten horses lawfully traveling thereon, or who negligently conducts his lawful business in such manner as to frighten them, is liable for the consequences." In the case of *Nye v. Dibley,* 88 Minn. 465, 93 N. W. 524, the Supreme Court of Minnesota says: "Defendants were engaged in a public work upon the highway under a contract with the public authorities, and had the undoubted right to make such reasonable use of the highway as was necessary in carrying for-

ward the work. But they had no right to its exclusive use, and were bound °so to use it as not to interfere unnecessarily with public travel thereon. They had the right to deposit upon it the material used in their work, and at an accessible and convenient distance from the point where the work was being performed; but they were bound so to deposit and place it as not to render the use of the highway by the public dangerous and unsafe, and to exercise reasonable care not to cause horses of ordinary gentleness to become frightened. The action is not founded on a claim that the act of defendants amounted to a nuisance in law, but upon the contention that they were negligent as to the manner in which they exercised a legal right in respect to depositing the material in the highway. . . . While they had a right to deposit the material in the highway near the place where the work was being performed, they were bound to respect the rights of the public as to the use of the highway, and their rights in the premises were as much entitled to consideration as the convenience of defendants.'' To the same effect is the case of *Jensen v. Oconto Falls,* 186 Wis. 386, 202 N. W. 676.

In the case of *Macomber v. Nichols,* 34 Mich. 212, Chief Justice Cooley decided that it was error for the trial court in its instructions to the jury to permit the right of recovery to turn on the question whether or not a steam engine rightfully on the highway was calculated to frighten horses, but that the question is one of fact of reasonable use and reasonable care for the jury to decide. Cases sustaining this rule of law are: *Carlson v. Town of Greenfield,* 130 Wis. 342, 110 N. W. 208; *King v. Swanson,* 216 Ill. App. 294; *Boos v. Township of Northfield,* 186 Mich. 386, 152 N. W. 1042. In an action involving the question whether articles are negligently placed in a highway and whether they are likely to frighten horses of ordi-

nary gentleness, are questions of fact fairly and properly to be submitted to the jury. *Boos v. Township of Northfield, supra; Carlson v. Town of Greenfield, supra.*

The highway in the case at bar was about 58 feet wide and the traveled part thereof was graded on both sides and was about 18 feet wide, thus leaving the grass banks on both sides of the highway about 18 to 20 feet wide. These banks were covered with growing grass and weeds about a foot high. On the south side of the highway there was a hedge fence which marked the south line of the highway. The horse was being driven in an easterly direction when it became frightened at the three spools which had been placed by the defendant on the south side of the highway. There is testimony in the record tending to prove that the spools were situated about 18 feet from the hedge fence and about four feet from the beaten track of the highway. Photographs were introduced in evidence showing the position of the spools on the highway. The spools were placed in the highway by the defendant in an irregular row about 12 feet apart. They were about 55 inches high, two feet wide, and the ends were painted aluminum in color. The accident occurred on June 10, 1929, at about 8 o'clock p. m., when it was getting dusk. Plaintiff also proved that other gentle horses had become frightened at the three spools thus standing in the highway.

It is not contended that the plaintiff was not in the exercise of due care, nor that the horse was not an ordinarily gentle one. Under the rules above stated, and the facts above enumerated and as shown by the evidence, the trial court did not err in overruling the motions of the defendant asking for a verdict in its favor under the first count of the declaration. *Thayer v. Bolender,* 250 Ill. App. 16; *Harmon v. Peoria Ry. Co.,* 160 Ill. App. 458; *Carlson v. Town of Greenfield,*

*supra; Berg v. Auburn,* 140 Wis. 492, 122 N. W. 1041; *Tilton v. Inhabitants of Wenham,* 172 Mass. 407, 54 N. E. 514.

The second count charged in general terms, and somewhat loosely, that the defendant *placed* and *left* the spools in the highway contrary to the statute. *Brickell v. Williams,* 180 Mo. App. 572, 167 S. W. 607. The plaintiff introduced evidence tending to show the length of time the spools were permitted to remain in the highway by the defendant. The evidence was admitted without any objection. Defendant's peremptory instruction, directed at the second count, stated that the second count alleged that the spools were "placed and *left*" in the highway by the defendant. Under the allegations of the second count, the construction given to it by the defendant, and the proof made by the plaintiff, we think that the question of fact presented was, whether the defendant left the spools in the highway an unreasonable length of time, although the defendant may have had the right to place the spools in the highway. *Hoadley v. People,* 23 Ill. App. 39; *Nelson v. Fehd,* 104 Ill. App. 114. It might be that the defendant had the lawful right to place the spools in the highway, but it could not use the highway as a place of storage for the spools of wire. This proposition is sustained by the authorities, including those decisions cited by the defendant on the general rule that an owner or occupant of land abutting on a public road may use the road temporarily, in such manner as not to unnecessarily interfere with, or impede public travel, for necessary and legitimate purposes to carry on the business conducted on the land. *Judd v. Fergo,* 107 Mass. 264; *Golden v. Chicago, R. I. & P. Ry.,* 84 Mo. App. 59; *Boos v. Township of Northfield, supra; Berg v. Auburn, supra; Elam v. City of Mt. Sterling,* 132 Ky. 657, 117 S. W. 250; *City of Elgin v. Thompson,* 98 Ill. App. 358; *Tolman*

*& Co. v. City of Chicago,* 240 Ill. 268; *Sear v. City of Chicago,* 247 Ill. 204.

It also remains to be determined if there is evidence fairly tending to show that the action of the defendant leaving the spools in the highway was a violation of the statute, and that whether there was some natural causative connection between the alleged violation of the statute and the frightening of the horse. *Cleveland, C. C. & I. Ry. Co. v. Wynant,* 114 Ind. 525, 17 N. E. 118. We do not think that the second count, under its allegation and the duty alleged breached, is a concurrent charge of negligence under the common law and a failure to observe the statute, but that it is solely a charge of negligence based on the statute, and the declaration is so understood by the plaintiff and the defendant.

The plaintiff relies on section 5 of the Illinois Revised Statutes, Cahill's St. ch. 121, ¶ 167, the pertinent part of which is as follows: "If any person shall injure or obstruct a public road by felling a tree or trees in, upon or across the same, or by placing or leaving any other obstruction thereon, . . . he shall forfeit for every such offense a sum not less than three dollars nor more than ten dollars." This section has been so construed by our courts so as to carry out the intention of the legislature that the whole width of the highway shall remain free from any obstructions. *Boyd v. Town of Farm Ridge,* 103 Ill. 408; *Seidschlag v. Town of Antioch,* 207 Ill. 280; *Scott v. Town of New Boston,* 26 Ill. App. 108. One who places an obstruction in any part of a highway, even if done lawfully initially, must use reasonable care where the obstruction is placed and the time it remains in the highway under the circumstances and necessities governing the situation. That this is the rule at common law and the purpose of the statute is clear. When the graded part of the highway in question was

muddy, the travelers in vehicles used the grass banks to drive upon. That this was their legal right and not to be unduly interfered with cannot be disputed. *Neale v. State,* 138 Wis. 484, 120 N. W. 345; *Johnson v. Whitefield,* 18 Me. 286, 36 Am. Dec. 721.

Under the peremptory motion of the defendant, the evidence must be considered in the light most favorable to the plaintiff. It can be fairly said 'that the evidence shows that the spools were left by the defendant in the highway from 10 days to two weeks. Whether this was an unreasonable length of time under the circumstances appearing in evidence was a question of fact for the jury. *Davis v. Thompson,* 134 Mo. App. 13, 114 S. W. 550; *Nelson v. Fehd, supra; Jensen v. Oconto Falls, supra; McCarty v. Brookline,* 114 Mass. 527. This court holds that one who leaves an obstruction in a public highway an unreasonable length of time, notwithstanding his right to use and obstruct a part of the highway in a reasonable manner for a temporary period of time, and not unduly interfering with or impeding traffic on the highway, is liable for the legal consequences arising from his action of leaving the obstruction in the highway. Further, that such action is a violation of the statute. There is evidence in the record that the plaintiff sustained the injuries complained of resulting naturally and proximately from the violation of the statute by the defendant, and, in our opinion, this made out a prima facie case for the plaintiff. *Grayhek v. Stern,* 154 Ill. App. 385. We do not think that the court erred in submitting the case to the jury under all of the evidence in the case.

The defendant assigns as error that the trial court permitted the plaintiff to prove that other gentle horses were frightened by the spools standing in the highway. While the authorities are not in accord on the question of the admissibility of such evidence, it has been held in this State that such testimony is ad-

missible. *Galt v. Woliver,* 103 Ill. App. 71. These cases are supported by the general rule laid down in the cases of *Moore v. Bloomington, D. & C. R. Co.,* 295 Ill. 63 and *City of Bloomington v. Legg,* 151 Ill. 9. It may also be stated that the defendant, in its argument complaining of instructions given for the plaintiff, contends that it was essential that the plaintiff prove that the defendant knew, or by the exercise of ordinary care could have known, that the spools were calculated to frighten gentle horses. If this be true (which we do not decide) then the cases of *Galt v. Woliver* and *City of Elgin v. Thompson, supra,* are in point. In the cases so cited it is held that proof of similar accidents are admissible to prove an allegation of the declaration of notice or knowledge on the part of the defendant of the dangerous nature of the obstruction in the street. See, also, *Phelps v. Winona & St. P. R. Co.,* 37 Minn. 485, 35 N. W. 273, and *Jensen v. Oconto Falls, supra.* If the defendant's view of the law is correct that it was essential for the plaintiff to prove that the defendant had knowledge that the spools were frightful in character to gentle horses, then it is now too late, after verdict, to complain that the declaration contains no allegation of such knowledge by the defendant. *Sargent Co. v. Baublis,* 215 Ill. 428.

One of the defendant's witnesses was J. Harvey Irwin, the sales engineer of the company which manufactured the wire and delivered the wire on the carted spools to the defendant. He testified that, "In the scope of my work as sales engineer, I am familiar with the manner in which these reels are handled and used in the transmission line construction." This answer was stricken by the trial court on motion of the plaintiff as being immaterial. Thereupon, the defendant made an offer of proof as follows: "We now offer to prove, and aver that if permitted to do so, we will prove that, by the witness who has been sworn and by other

witnesses, that many hundreds of reels of similar size and color were placed along and upon public highways in the course of the construction of the transmission lines upon steel towers similar to those erected and constructed by the defendant along the place of the accident, and that such reels were placed in and upon the public highway at different points; and that such custom and practice was in accord with standard and approved engineering and construction methods and practice; that reels had been similarly placed at other points along the public highways and in the public highways of Bureau county, La Salle county, Henry county, Stark county, Putnam county, Peoria county and other places in the State of Illinois by this and other companies engaged in similar work; that where distribution lines are located in or adjacent to roads for serving rural lines where the power company does not own a private right-of-way, they are built at or along the fence line, or many times in the public road, and that under such conditions the reels are placed in the road; and that this is according to good, standard engineering practice and methods.

"We further offer to prove, and aver that we will prove, if permitted to do so, by Mr. J. H. Irwin, the witness now on the stand, that he is and for fifteen years has been engaged as a sales engineer in selling and shipping these reels throughout the State of Illinois and in the counties hereinbefore mentioned, and that within his knowledge no other accident in the nature of or resulting from a run-a-way horse or frightened horse has ever occurred by reason thereof.

"And we also offer to prove, and will prove, if permitted to do so, by the general construction superintendent of this defendant company and by other of its employees and agents and servants, that this defendant constructed one hundred miles or more of transmission lines, and that that line in question from Galva to Kewanee, to Seneca and La Salle, involved

seventy miles or more of such construction, and that approximately eight hundred reels were used in the course of such construction, and that seventy-five per cent of such reels were placed adjacent to or in and upon public highways, and that no other accident involving injuries from a run-a-way or frightened horse ever occurred as a result thereof.

"We also offer to show that in addition to reels or spools, other materials and supplies, gravel, cement, steel, sand, water barrels and insulators in crates were also placed along or adjacent to public highways in the course of such construction work, according to good and approved engineering standards and practice, and that no accident resulting from a run-a-way or frightened horse occurred by reason thereof.

"We make one more offer to prove that in the construction of this same high tower line approximately a year or more before the accident in question, that reels were placed at this same point as the reels were placed which were involved in this accident, or approximately the same point in the public roadway and adjacent to the fence line, which were used for the stringing of the wires on the south arm or arms of said towers, which were on the same road along which the plaintiff was driving at the time she claims to have received the accident in question, and that no accidents from run-a-way or frightened horses occurred by reason thereof." (Offer excluded by trial court.)

The evidence of the defendant tends to prove that the spools were placed by it near the hedge fence on the south side of the road and not near the beaten track of the highway. Was it proper in this case for the defendant to prove the custom or common usage of placing spools of wire in the highway? The evidence was not admissible under the second count which charged that the spools were left in the highway contrary to the statute. We do not understand that the customary way of doing an act may be shown to furnish

a test of due care on the part of a defendant where the usage is contrary to law. *Hopper v. Sage,* 112 N. Y. 530, 8 Am. Rep. 771; *Southwestern Freight & Cotton Press Co. v. Stanard,* 44 Mo. 71.

We do not think it necessary to decide if it is the rule in this State that evidence of the general custom of doing an act without injury to others, is competent on the question whether the defendant was in the exercise of due care in the performance of the act complained of in the declaration. Evidence is not admissible as to the customary manner of doing acts or carrying on a business when such manner is a matter of common knowledge. *Pulsifer v. Berry,* 87 Me. 405, 32 Atl. 986; *Kolsti v. Minneapolis R. Co.,* 32 Minn. 133, 19 N. W. 655; *Boyce v. Wilbur Lumber Co.,* 119 Wis. 642, 97 N. W. 563. We think that it is a matter of common knowledge that public service companies and highway authorities place material, such as lumber, fuel, barrels, poles and spools of wire on the side of the highways of this State where such material is used, or intended to be used on the highways or on the land abutting thereon.

We do not think it is competent evidence for the defendant to prove that the spools placed adjacent to the highway had not resulted in accidents caused by run-a-way horses. *Hodges v. Bearse,* 129 Ill. 87; *Keith v. Sands & Maxwell Lumber Co.,* 88 Mich. 172, 50 N. W. 130; *Lutton v. Town of Vernon,* 62 Conn. 1, 23 Atl. 1020; *Mobile & O. R. Co. v. Vallowe,* 214 Ill. 124.

The last paragraph of the defendant's offer of proof is not a clear and specific offer to prove that other gentle horses were not frightened by the spools in the highway. Such proof must be limited in scope to conditions similar to those in question and not one that no other accidents from frightened horses had occurred because the spools were in the highway. The witnesses may not have had any knowledge that other accidents had occurred because horses became frightened at the

spools in the highway, but this would not prove, nor was it a definite offer to prove that the spools were not frightful to gentle horses under the same or similar circumstances existing, as shown by the evidence, when the horse of the plaintiff became frightened at the spools. Thus in the case of *Bloor v. Town of Delafield,* 69 Wis. 273, 34 N. W. 115, evidence that numerous horses had been driven past an object in the daytime without becoming frightened was not held admissible for the defendant in an action for injuries caused by fright of a horse at the object in the highway while driven after dark as this evidence had no tendency to show that even quiet horses would not have been frightened at the object after dark when said object might appear distorted and unnatural. Evidence of this character must not be too remote. *Cunningham v. Clay Township,* 69 Kan. 373, 76 Pac. 907; *Gould v. Hutchins,* 73 N. H. 69, 58 Atl. 1046.

The offer to prove the general custom of placing reels in and alongside of the highways of this State was very broad and included the offer to prove that the defendant had placed spools thus on former occasions. Defendant could not excuse its alleged negligence by proving that it has been negligent on other occasions. *Sewing v. Harrison County,* 156 Iowa 229, 136 N. W. 200.

Defendant also assigns as error the refusal of the trial court to admit in evidence certain time sheets of the defendant. The sheets are not intelligible without the aid of parol testimony, but it is contended by the defendant that they prove the length of time the spools remained in the highway. The evidence shows that the time sheets are in the handwriting of one E. Thicksten, but there is no testimony as to the whereabouts of Thicksten except the testimony of a former employee of the defendant. He testified that he does not know where Thicksten is. There is no evidence in the record that the entries on the time sheet are true, or correct,

or accurate; no testimony that the entries were made by the defendant in the usual and regular course of its business by one whose duty it was to make the entries; no proof that the entries relied upon were entered contemporaneously with the acts alleged purporting to show the length of time the spools remained in the highway. *In re Estate of Moorhouse,* 249 Ill. App. 432. The court did not err in excluding the time sheets.

Many objections are made by the defendant to the instructions given by the court on behalf of the plaintiff, and it is further contended that the trial court erred in modifying and refusing instructions offered by the defendant. After carefully considering the instructions given, we have arrived at the conclusion that the instructions, as a series, and under the evidence before the jury, were not misleading or conflicting and presented to the jury the law applicable to the case fairly and clearly. One of the objections made to some of the instructions is, that they assume the negligence of the defendant as charged in the declaration. We do not think those instructions are subject to the objection. Those instructions did not direct a verdict, and the jury was clearly and repeatedly told in other instructions given that the plaintiff must prove the allegations of negligence in her declaration by a preponderance of the evidence before she would be entitled to a verdict.

It would be impossible without extending this opinion beyond all reasonable length, to discuss all the reasons mentioned by the defendant, why, in the opinion of its counsel, there was error by the trial court in giving, refusing and modifying instructions. Many of the objections urged against the instructions are disposed of by the law as declared in this opinion. The error assigned by the defendant that there was reversible error by the trial court in giving, refusing and modifying instructions, cannot be maintained.

It is further argued by the defendant that there is reversible error appearing in the record because of the remarks made by the counsel for the plaintiff during the trial and in his closing arguments to the jury. It seems plain from the bill of exceptions that some cause of irritation existed between opposing counsel in the case which led to a few unjustifiable remarks of counsel for the plaintiff, reflecting on the motive of the attorney for the defendants in his manner or purpose of offering testimony. Upon immediate protest and objection by defendant's attorney, the objectionable remarks were stricken from the record. The said remarks do not reflect on any of the witnesses of the defendant nor on their testimony. Some of the objectional remarks used by the plaintiff's attorney were changed to milder terms when objected to by the defendant's attorney.

Extracts of the argument made by the attorney for the plaintiff in his closing argument to the jury are before us in the record. The entire argument made by the plaintiff's attorney is not before us, and it appears from the extracts that the attorney used words not warranted by the evidence, but that his remarks were interrupted by objection of the defendant before the sentences of plaintiff's attorney were completed. While these remarks of the attorney for the plaintiff are subject to criticism, we do not think they were of such a nature as to prejudice the jury against the defendant so as to justify a reversal of the case. *Kreeb v. Lake Erie & Western R. Co.*, 211 Ill. App. 630.

After a consideration of the whole record, we are of the opinion that the evidence supports the verdict and there is no reversible error in the case. The judgment of the lower court should be and is hereby affirmed.

*Judgment affirmed.*